1  Law Offices of
   JAN JOSEPH BEJAR,
2  A Professional Law Corporation
   2727 Camino del Rio South, Suite 110
3  San Diego, CA 92108
   (619) 291-1112
4
5  Jan Joseph Bejar, Esq.
   Cal. State Bar No. 110192

FILED

08 APR 23 AM 8:52

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ____  DEPUTY

6

7

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10  Katy P. GUERRERO,                )    Civil No. 08 CV 0733 BTM NLS
                                      )
11          Plaintiff,                )
                                      )
12  v.                                )    COMPLAINT FOR REVIEW OF
                                      )    NATURALIZATION APPLICATION
13  Michael Chertoff, Secretary; Jonathan )  UNDER 8 U.S.C. § 1447(b);
    Scharfen, Acting Director; Paul Pierre, )  ALTERNATIVELY, COMPLAINT FOR
    District Director; Christina Poulos, Service ) RELIEF UNDER 5 U.S.C. § 702;
14  Center Director; Michael B. Mukasey, )   ALTERNATIVELY, COMPLAINT FOR
    Attorney General; Robert S. Mueller, III, ) MANDAMUS RELIEF UNDER
15  FBI Director,                     )    28 U.S.C. § 1361.
                                      )
16                                    )
            Defendants.               )    Alien No. A76 451 411
17  _____ )

18  Plaintiff, by and through her attorney, alleges as follows:

19          **Introduction**

20  1.      In this Complaint, the Plaintiff requests that this Court assume jurisdiction over her

21  application for naturalization, hold a hearing on her application for naturalization, and make a

22  determination on her application for naturalization, pursuant to 8 U.S.C. § 1447(b).  The

23  Plaintiff's application for naturalization has been pending for more than 120 days beyond the date

24  on which the United States Citizenship and Immigration Services ("USCIS") conducted her

25  examination.  Over 34 months have passed since the Plaintiff's examination on her application

26  for naturalization on or about June 6, 2005.  Additionally, her application has been pending for

27

28                                    1

1  more than 120 days beyond the date on which the Plaintiff revoked her "waiver" of the

2  requirement that USCIS adjudicate her application within 120 days of her examination.  Thus,

3  the Plaintiff requests that this Court make a determination on her application or remand the

4  matter to USCIS with instructions to determine the matter within 60 days, or within a reasonable,

5  finite time, under 8 U.S.C. § 1447(b).  Alternatively, the Plaintiff requests that the Court review

6  the agencies' failure to adjudicate her application for naturalization under the Administrative

7  Procedures Act ("APA") at 5 U.S.C. § 702, and, under its authority at 5 U.S.C. § 706(1) compel

8  the Federal Bureau of Investigation ("FBI") to complete its security checks within 30 days and

9  compel USCIS to determine the matter within 30 days after the FBI's completion of the security

10 checks.  Alternatively, the Plaintiff requests that the Court issue a writ of Mandamus, under 28

11 U.S.C. § 1361, to compel the FBI to complete its security checks within 30 days and to compel

12 USCIS to determine the matter within 30 days after the FBI's completion of the security checks.

13

14 **I.      Jurisdiction**

15 2.      This Court has jurisdiction over this action under 8 U.S.C. § 1447(b).  Under 8 U.S.C.

16 §1447(b), if USCIS fails to make a determination on an application for naturalization before the

17 end of the120-day period after the date on which it conducts the examination of the applicant,

18 then the applicant may apply to the United States District Court for the district in which the

19 applicant resides for a hearing on the matter.  8 U.S.C. § 1447(b).  The initial examination

20 triggers the 120-day statutory period within which USCIS must make a determination on the

21 application for naturalization. United States v. Hovsepian, 359 F.3d 1144, 1151 (9th Cir.

22 2004)(en banc).  Upon an application under this section, the District Court has exclusive

23 jurisdiction over the application for naturalization and may either determine the matter or remand

24 the matter with appropriate instructions to USCIS to determine the matter.  8 U.S.C. § 1447(b);

25 Hovsepian, 359 F.3d 1144, 1159 - 1164.

26 3.      If the applicant "waives" USCIS' statutory requirement under 8 U.S.C. § 1447(b), then

27

28                                          2

1    arguably the statutory adjudication period is tolled, but the 120-day period commences on the

2    date that the applicant revokes the waiver. See Raufi v. Chertoff, et.al., 434 F.Supp. 813, 815

3    (S.D. Cal. 2006).

4    4.    The Plaintiff underwent the examination regarding her application for naturalization

5    over thirty-four months ago, on or about June 6, 2005. At her examination, at which Ms.

6    Guerrero appeared pro se, the Defendants' agent induced her to sign a "waiver" of USCIS'

7    statutory requirement to adjudicate her examination, despite the facts that the Plaintiff gained

8    nothing from signing the waiver and that no statutory or regulatory provisions authorize such

9    "waivers." On November 17, 2007, Ms. Guerrero sent a revocation of her waiver to USCIS via

10    certified mail, which USCIS received on November 27, 2007. Over 120 days have passed since

11    the Plaintiff's revocation, and to date, she has not received a final determination on her

12    application for naturalization. Thus, this Court has jurisdiction over the matter.

13    5.    Jurisdiction is also conferred upon this Court for all of the Plaintiff's claims under 28

14    U.S.C. § 1331, as an action involving a federal question. The Plaintiff's claims for relief all arise

15    under federal statutory law. Finally, with regard to the Plaintiff's request for mandamus relief, 28

16    U.S.C. § 1361 provides, "[t]he district courts shall have original jurisdiction of any action in the

17    nature of Mandamus to compel an officer or employee of the United States, or any agency

18    thereof, to perform a duty owed to the plaintiff."

19

20    **II.    Venue**

21    6.    Under 8 U.S.C. § 1447(b), the District Court in the district in which the plaintiff resides

22    is the appropriate court in which to apply for a hearing on the matter. Moreover, under 28 U.S.C.

23    § 1391(e), in a civil action in which a defendant is an officer or employee of the United States or

24    any agency thereof acting in his official capacity or under color of legal authority, the plaintiff

25    may bring such an action, except as otherwise provided by law, in any judicial district in which a

26    defendant in the action resides, a substantial part of the events or omissions giving rise to the

27

28                                          3

1   claim occurred, or where the plaintiff resides, if no real property is involved in the action.

2   7.      In this action, Ms. Guerrero, the Plaintiff, resides in the Southern District of California.

3   The Defendants operate in the Southern District of California, and a substantial part of the events

4   giving rise to the claim occurred in the Southern District of California. Thus, venue is proper

5   with this Court.

6

7   **III.    Plaintiff**

8   8.      The Plaintiff, Ms. Guerrero, is a lawful permanent resident of the United States who

9   resides within the jurisdiction of this Court. On or about November 18, 2004, Ms. Guerrero

10  applied for naturalization pursuant to 8 U.S.C. §1421, et seq., and she underwent an examination

11  under 8 U.S.C. §1446 on or about June 6, 2005. At her examination, Ms. Guerrero signed a

12  "waiver" of USCIS' statutory requirement to adjudicate her application within 120 days of her

13  examination. According to Ms. Guerrero's knowledge, she has satisfied all the requirements for

14  naturalization, except that the Defendants and their agents have not yet completed the required

15  "security checks." Since June 6, 2005, Ms. Guerrero's Congressional Representatives have

16  conducted at least two inquiries into the status of Ms. Guerrero's application, and the Defendants'

17  agents have responded that her security checks were still pending, such that the Defendants and

18  their agents could not make a final determination on her application. Ms. Guerrero's application

19  for naturalization has been pending for over thirty-four months since her examination on or about

20  June 6, 2005. Moreover, the Defendants have conceded in litigation over delays in adjudication

21  of naturalization applications in other jurisdictions that they commence the requisite security

22  checks for an applicant upon receipt of an application for naturalization, see e.g. Mocanu v.

23  Mueller, 07-0445, 2008 WL 372459, at *4 (E.D. Pa.. Feb. 8, 2008), and in this case, the

24  Defendants received Ms. Guerrero's application for naturalization on or about November 18,

25  2004. Accordingly, the Defendants have had over forty months to complete the required

26  security checks.

27

28                                                        4

**IV.     Defendants**

9.      Defendant Michael Chertoff is the Secretary of the Department of Homeland Security ("DHS").  Jonathan Scharfen is the Acting Director of the United States Citizenship and Immigration Services ("USCIS"), an office within DHS.  Paul Pierre is the District Director of the USCIS San Diego District.  Christina Poulos is the Acting Director of the USCIS California Service Center.  Michael B. Mukasey is the Attorney General of the United States.  Robert Mueller, III, is the Director of the FBI, an agency within the Department of Justice.  The Plaintiff is suing all the Defendants in their official capacities.  Defendants are in charge of processing and adjudicating applications for naturalization pursuant to 8 U.S.C. § 1421, et seq., and/or performing the requisite "full criminal background check" for applicants for naturalization under Pub.L. No. 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.

**V.     Statutory Framework**

**Complaint for Review of Naturalization Application**

10.     Pursuant to Section 336(b) of the Immigration and Nationality Act, 8 U.S.C. § 1447(b),

> "[i]f there is a failure to make a determination under section 335 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

11.     The initial interview date is the "examination" that triggers the 120-day period under 8 U.S.C. § 1447(b).  Hovsepian 359 F.3d at 1151.  If the applicant "waives" USCIS' statutory requirement under 8 U.S.C. § 1447(b), then arguably the statutory adjudication period is tolled, but the 120-day period commences on the date that the applicant revokes the waiver.  See Raufi v. Chertoff, et.al., 434 F.Supp. 813, 815 (S.D. Cal. 2006).

12.     An applicant for naturalization, in general, must demonstrate English language ability and

5

1    knowledge of United States history and government.  8 U.S.C. § 1423(a).

2    13.    Persons who are opposed to organized government, who are opposed to the rule of law, or

3    who favor totalitarian forms of government are ineligible for naturalization, as are deserters of

4    the United States Armed Forces or aliens relieved of duty in the United States Armed Forces due

5    to alienage.  8 U.S.C. § § 1424 - 1426.

6    14.    Persons who satisfy the following requirements may be naturalized: (1) after admission

7    as a lawful permanent resident, continuous residence within the United States for at least five

8    years immediately preceding the date of filing the application, through the time of filing her

9    application, up to the time of admission to citizenship; (2) physical presence in the United States

10    during at least half of the five years immediately preceding the date of filing the application; and

11    (3) good moral character and attachment to the principles of the Constitution of the United States

12    during the five year period immediately preceding the application and throughout the period that

13    the application is processing.  8 U.S.C. § 1427.

14    15.    A 1998 federal appropriations bill prohibits USCIS from using federal funds to complete

15    adjudication of an application for naturalization unless USCIS has received confirmation from

16    the FBI that it has completed "a full criminal background check."  Pub.L. No. 105-119, Title I,

17    Nov. 26, 1997, 111 Stat. 2448.  A "name check" is not specifically mandated by law.

18    16.    The regulation at 8 C.F.R. § 335.2(b) defines "a definitive response that a full criminal

19    background check on an applicant has been completed" from the FBI as  "(1) Confirmation from

20    the [FBI] that an applicant does not have an administrative or a criminal record; (2) Confirmation

21    from the [FBI] that an applicant has an administrative or a criminal record; or (3) Confirmation

22    from the [FBI] that two properly prepared fingerprint cards (Form FD-258) have been determined

23    unclassifiable for the purpose of conducting a criminal background check and have been

24    rejected."  The regulations do not mandate that the FBI perform a "name check."

25    17.    According to the USCIS Ombudsman in its 2007 Annual Report to Congress, the name

26    checks "are not conducted by the FBI as part of ongoing investigations or from a need to learn

27

28                       6

1    more about an individual because of any threat or risk perceived by the FBI. Instead, the name

2    checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined

3    standards." See USCIS Ombudsman, "Annual Report to Congress June 2007," at 38, attached as

4    Exhibit 7. In fact, "[t]he Ombudsman agrees with the assessment of many case workers and

5    supervisors at USCIS field offices and service centers that the FBI name check process has

6    limited value to public safety or national security, especially because in almost every case the

7    applicant is in the United States during the name check process, living or working without

8    restriction." Id. at 40. The USCIS Ombudsman has recommended in its 2006 and 2007 Annual

9    Reports to Congress that USCIS re-examine its use of the "name check," and in its 2007 Annual

10   Report, the USCIS Ombudsman proposed three alternatives to requesting a name check for every

11   applicant. Id. at 40 - 45. Thus, as its own report demonstrates, no statute or regulation

12   specifically requires that the FBI perform a "name check."

13   18.    Additionally, an applicant for relief in removal proceedings before the immigration court

14   must undergo "all relevant identity, law enforcement, or security investigations or

15   examinations," before an immigration court may grant relief. See e.g., 8 C.F.R. § § 1003.1(d)(6),

16   1003.47(g). Yet, Immigration and Customs Enforcement ("ICE"), a sister agency of USCIS

17   within the Department of Homeland Security, does not interpret this requirement to include an

18   FBI name check. Accordingly, an FBI name check is not legally required as part of a criminal or

19   administrative background check.

20   19.    A federal district court recently concluded that "USCIS has required the FBI name checks

21   under the mistaken impression that it has authority, based on its own regulations, to require such

22   checks for LPRs [lawful permanent residents] who seek to become naturalized citizens."

23   Mocanu v. Mueller, 07-0445, 2008 WL 372459, at *10 (E.D. Pa.. Feb. 8, 2008), as modified at

24   2008 WL 570953 (February 28, 2008). After an extensive analysis of the FBI name check

25   requirement, the court found that Congress never authorized the name check requirement and

26   that the name check requirement is not "mentioned or contemplated by any fair reading" of the

27

28                                          7

1  regulations. Id. Further, the court initially enjoined USCIS from using the FBI name check

2  program as a factor in the decision making as to the plaintiffs in that case unless USCIS initiated

3  a notice and comment procedure concerning its use of the FBI name check procedure. Id. at

4  *18.[1]

5

6  **Complaint for Review of Failure to Complete the Name Check under the APA**

7  20.    The APA provides that "with due regard for the convenience and necessity of the parties

8  or their representatives and within a reasonable time, each agency shall proceed to conclude a

9  matter presented to it." 5 U.S.C. § 555(b).  Therefore, under the APA, government agencies have

10  a duty to act on matters before them within a reasonable time.

11  21.    Under the APA, "[a] person suffering legal wrong because of agency action, or adversely

12  affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to

13  judicial review thereof." 5 U.S.C. § 702.  An agency action may include "an agency rule, order,

14  license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

15  22.    The APA does not apply to the extent that another federal statute precludes judicial

16  review of an agency's failure to act.  5 U.S.C. § 701(a)(1).  An agency's action is reviewable

17  under the APA except where it is committed to agency discretion by law, but the APA embodies

18  a basic presumption of judicial review.  5 U.S.C. § 701(a)(2); Abbott Laboratories v. Gardner,

19  387 U.S. 136, 140 (1967).  A plaintiff must exhaust her administrative remedies before seeking

20  judicial review of agency action under the APA.  See Darby v. Cisneros, 509 U.S. 137 (1993).

21  23.    Under the APA, federal courts "shall...compel agency action unlawfully withheld or

22  unreasonably delayed...." 5 U.S.C. § 706(1) (emphasis added).

23

24

_____

25      [1]Ultimately in Mocanu, the plaintiff's FBI completed the name check, USCIS adjudicated

26  the plaintiff's application for naturalization, and the plaintiff voluntarily dismissed the case.  See
    Mocanu v. Mueller, 07-0445, 2008 WL 570953 (E.D. Pa. Feb. 28, 2008) and Mocanu v. Mueller,

27  07-0445, "Voluntary Stipulation of Dismissal and Order," (March 20, 2008).

28                                              8

**Complaint for Mandamus Relief**

24.     If a government agency has failed to execute a duty owed to a plaintiff, then that plaintiff may bring a Mandamus action pursuant to 28 U.S.C. § 1361. Title 28 U.S.C. § 1361 provides the district courts with "...original jurisdiction of any action in the nature of Mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

25.     For a court to grant this remedy, (1) the plaintiff must have a clear right to the relief sought, (2) the defendants must have a clear, non-discretionary duty to act, and (3) no other adequate remedy is available. Patel v. Reno, 134 F.3d 929, 931 (9th Cir. 1998).

26.     The Defendants have a non-discretionary duty to recommend or deny an application for naturalization and to perform the required security checks. The Southern District of California, as well as several other courts within the Ninth Circuit, have held that the government has a non-discretionary duty to make a decision on immigration applications within a reasonable time. See e.g., He v. Chertoff, No. 06-02608 (S.D. Cal. 2007) ("In contrast, a larger number of courts, including those in the Ninth Circuit, have held that while the final decision on the application itself may be discretionary, the duty to reach a decision is not discretionary." (emphasis added)); Ibrahim v. Chertoff, No. 06-2071, 2007 WL 1558521 (S.D.Cal. May 25, 2007); Jiang v. Chertoff, No. 06-2816, 2008 WL 227955 (S.D.Cal. Jan 28, 2008); Xin Liu v. Chertoff, No. 06-2808, 2007 WL 2433337 (E.D. Cal. Aug. 22, 2007); Lazli v. U.S. Citizenship and Immigration Services, No. 05-1680, 2007 WL 496351 (D. OR. Feb. 12, 2007); Quan v. Chertoff, No. 07-00417, 2007 WL 2023553 (N.D. Cal. 2007); Razaq v. Poulos, No. 06-2461, 2007 WL 61884 (N.D. Cal. 2007); Singh v. Still, 470 F.Supp.2d 1064, 1068 - 1071 (N.D. Cal. 2007); Okunev v. Chertoff, No. 07-00417, 2007 WL 2023553 (N.D.Cal. July 11, 2007); and Aboushaban v. Mueller, No. 06-1280, 2006 WL 3041086 (N.D.Cal. Oct. 24, 2006).

///

///

9

## VI.    Factual Allegations

27.    Ms. Guerrero is a 31-year-old native and citizen of Nicaragua.  Ms. Guerrero was

admitted for lawful permanent residence in the United States on December 22, 1999.  See Exh. 1,

Copy of Ms. Guerrero's Resident Alien Card.

28.    On or about November 18, 2004, the Plaintiff filed a Form N-400, Application for

Naturalization, with the USCIS California Service Center in Laguna Niguel, California.  See

Exh. 2, Copy of Receipt Notice.

29.    Ms. Guerrero appeared as requested at her Fingerprinting and Biometrics appointment

prior to her interview, at which she provided the Defendants with her fingerprints and biographic

information necessary to conduct the requisite security checks.

30.    The Defendants' agents scheduled an interview with Ms. Guerrero regarding her

application for June 6, 2005, and the Defendants' agent interviewed Ms. Guerrero at that time.

31.    At the interview, Ms. Guerrero passed the tests of English and United States history

and government, as required under 8 U.S.C. § 1423(a)(1).

32.    At that time, however, the Defendants and their agents had not yet completed the

security checks into Ms. Guerrero's background and could not make a determination on her

application for naturalization.  The Defendants' failure to complete the security checks was not

due to Ms. Guerrero's lack of cooperation, as she complied with all requirements.  The

Defendants and their agents did not inform Ms. Guerrero of any other deficiency in her

application for naturalization, and the Defendants' agent informed Ms. Guerrero that she should

soon expect to receive by mail the notice to appear at an oath ceremony.

33.    Ms. Guerrero appeared pro se at her interview on June 6, 2005, and at her interview, the

Defendants' agent had Ms. Guerrero sign a "waiver" of the Defendants' requirement that they

adjudicate her application for naturalization within the 120-day statutory period, despite the facts

that Ms. Guerrero received no consideration for such a "waiver" and that a "waiver" of the

statutory requirement is not authorized by law.  See Exh.3, Copy of Ms. Guerrero's "waiver."

10

34.     Since her interview on June 6, 2005, over two and a half years ago, at Ms. Guerrero's request, Congressional Representatives Susan Davis and Duncan Hunter have made inquiries into the status of Ms. Guerrero's application for naturalization. The Defendants' agents have consistently responded that the Plaintiff's security checks were still pending completion and that, accordingly, the Defendants could not make a determination on her application. See Exh. 4, Copies of Inquiry Responses from the Defendants indicating that Ms. Guerrero's security checks are still pending completion.

35.     On November 16, 2007, Ms. Guerrero revoked her "waiver" of the Defendants' requirement that they adjudicate her application within 120 days. The USCIS San Diego District Office received this revocation on November 27, 2007. See Exh. 5, Copy of Ms. Guerrero's notice of revocation of her waiver.

36.     Ms. Guerrero has satisfied all statutory requirements for naturalization.

    a.     She has continuously resided in the United States for the five years immediately preceding her application for naturalization, through the present date.

    b.     She was physically present in the United States for half of the five years immediately preceding her application for naturalization.

    c.     Nothing in the record precludes a finding of Ms. Guerrero's good moral character.

    d.     Ms. Guerrero passed the tests of English language ability and knowledge of United States government and history..

    e.     The provisions at 8 U.S.C. § § 1424 - 1426 do not apply to Ms. Guerrero.

Thus, Ms. Guerrero is eligible for naturalization.

37.     To date, the Defendants have not made a final determination on Ms. Guerrero's application for naturalization, and more than 120 days have passed since the revocation of her waiver on November 27, 2007.

38.     The USCIS San Diego District Office's current average processing time for applications for naturalization is approximately nine months from the date of filing. See Exhibit 6, "District

1   Office Processing Dates for San Diego CA, Posted April 15, 2008." The Defendants have taken

2   over four times its average processing time to adjudicate the Plaintiff's application for

3   naturalization, which amounts to an unreasonable delay.

4

5   **VII.    Claim for Relief**

6   39.    The Defendants' failure to make a determination on Ms. Guerrero's application for

7   naturalization within 120 days of the date that she revoked her waiver of the Defendants'

8   requirement that it adjudicate her application within 120 days of her examination allows Ms.

9   Guerrero to seek relief from this Court under 8 U.S.C. § 1447(b).

10  40.    The Defendants' unreasonable and extraordinary delay in the completion of the requisite

11  background checks and determination on Ms. Guerrero's application for naturalization allows

12  Ms. Guerrero to seek an order from this Court under 5 U.S.C. § 706(1) compelling the FBI to

13  complete its security checks within 30 days and compelling USCIS to adjudicate the application

14  within 30 days after receiving confirmation of the FBI's completed security checks.

15  41.    The Defendants' unreasonable and extraordinary delay of over three years in the

16  completion of the requisite background checks and determination on Ms. Guerrero's application

17  for naturalization allows Ms. Guerrero to seek a writ of Mandamus from this Court under 28

18  U.S.C. § 1361 compelling the FBI to complete its security checks within 30 days and compelling

19  USCIS to adjudicate the application within 30 days after receiving confirmation of the FBI's

20  completed security checks.

21  42.    WHEREFORE, Ms. Guerrero prays that this Court,

22          a.    Assume jurisdiction over this cause of action;

23          b.    Conduct a hearing on Ms. Guerrero's application for naturalization, determine that

24                she is eligible for naturalization, and administer the oath of allegiance, thereby

25                swearing her in as a United States citizen;

26          c.    Alternatively, under 8 U.S.C. § 1447(b), remand Ms. Guerrero's application for

27

28                                                12

1    naturalization to the Defendants with instructions to make a final determination on

2    her application within 60 days.

3    d.    Alternatively, issue an order under the APA compelling the FBI to complete its

4    security checks within 30 days and compelling USCIS to make a final

5    determination on her application within 30 days of receipt of clearance from the

6    FBI;

7    e.    Alternatively, issue a writ of mandamus compelling the FBI to complete its

8    security checks within 30 days and compelling USCIS to make a final

9    determination on her application within 30 days of receipt of clearance from the

10    FBI;

11    f.    Grant Ms. Guerrero such other and further relief as this Court deems proper under

12    the circumstances; and

13    g.    Grant Ms. Guerrero reasonable attorney's fees and costs.

Respectfully submitted,

Attorney for Plaintiff,

DATED: 4/22/08        SIGNED:

Jan Joseph Bejar, Esq.
For: JAN JOSEPH BEJAR,
A Professional Law Corporation

13

# EXHIBITS

# COVER PAGE

1

# TABLE OF CONTENTS

2

3   Exhibit 1        Copy of Ms. Guerrero's  Resident Alien Card..........................................................1

4   Exhibit 2        Copy of the Receipt Notice for Ms. Guerrero's Application for Naturalization......2

5   Exhibit 3        Copy of Ms. Guerrero's "waiver" of the Defendants' statutory requirement
                     to adjudicate her application within 120 days from the examination......................3
6
    Exhibit 4        Copies of the responses to inquiries into the status of
7                    Ms. Guerrero's application...................................................................................4

8   Exhibit 5        Copy of Ms.Guerrero's notice of revocation of her waiver....................................6

9   Exhibit 6        Copy of the "District Office Processing Dates for San Diego CA, posted
                     April 15, 2008"..................................................................................................9
10
    Exhibit 7        Excerpt of USCIS Ombudsman's "Annual Report to Congress
11                   June 2007,"pages 37 - 45...................................................................................10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PERMANENT RESIDENT CARD

NAME GUERRERO DIAZ, KATY P

INS A# 076-451-411

Birthdate    Category    Sex
07/28/76      NC6         F

Country of Birth
Nicaragua

CARD EXPIRES 09/27/14

Resident Since 12/22/99



C1USA0764514116WAC04800384497<<
7607280F14092751C<<<<<<<<<<<7
GUERRERO<<DIAZ<<KATY<P<<<<<<<<<<



EXHIBIT

1

p.1

Department of Homeland Security
U.S. Citizenship and Immigration Services

**I-797, Notice of Action**

THE UNITED STATES OF AMERICA

| Receipt | | | NOTICE DATE November 26, 2004 |
|---|---|---|---|
| CASE TYPE N400    Application For Naturalization | | | INS A# A 076 451 411 |
| APPLICATION NUMBER WSC*4001235626 | RECEIVED DATE November 18, 2004 | PRIORITY DATE November 18, 2004 | PAGE 1 of 1 |

APPLICANT NAME AND MAILING ADDRESS
KATY PATRICIA GUERRERO DIAZ
5974 RANCHO MISSION DR UNIT 255
SAN DIEGO CA 92108

PAYMENT INFORMATION:

Single Application Fee:      $390.00
Total Amount Received:      $390.00
Total Balance Due:            $0.00

Ihhhdhhdhllhhduh

The above application has been received by our office and is in process. Our records indicate your personal information is as
follows:

Date of Birth:        July 28, 1976
Address Where You Live:  5974 RANCHO MISSION DR UNIT 255
                         SAN DIEGO CA 92108

Please verify your personal information listed above and immediately notify our office at the address or phone number listed
below if there are any changes.

You will be notified of the date and place of your interview when you have been scheduled by the local INS office.  You should
expect to be notified within 365 days of this notice.

If you have any questions or comments regarding this notice or the status of your case, please contact our office at the below address or customer service number. You
will be notified separately about any other cases you may have filed.

If you have other questions about possible immigration benefits and services, filing information, or INS forms, please call the INS National Customer Service Center
(NCSC) at 1-800-375-5283. If you are hearing impaired, please call the NCSC TDD at 1-800-767-1833.

If you have access to the internet, you can also visit INS at www.ins.usdoj.gov. Here you can find valuable information about forms and filing instructions, and about
general immigration services and benefits. At present, this site does not provide case status information.

INS Office Address:
US IMMIGRATION AND NATURALIZATION SERVICE
CALIFORNIA SERVICE CENTER
P.O BOX 10400
LAGUNA NIGUEL CA 92607-

INS Customer Service Number:
(800) 375-5283

APPLICANT COPY

WSC3001328514

Form I-797 (B



**EXHIBIT**

2

P. 2





**UNITED STATES
CITIZENSHIP AND
IMMIGRATION
SERVICES**

880 Front St. Room 1234
San Diego, CA 92101

District Director

Date: _06/06/05_

Applicant's Name: _KATY GUERRERO_
File #: _A 76 451 411_

I understand that in order to determine my eligibility for naturalization to United States citizenship, the U.S. Citizenship and Immigration Services is authorized to verify information contained in my N-400 Application for Naturalization, my immigration file(s), that which I provided during my interview, and information received from any other source.

As a result, I hereby waive the requirement under Section 336 of the Immigration and Nationality Act, that the United States Citizenship and Immigration Services must render a determination on my N-400 Application for Naturalization within 120 days from the date of my naturalization interview/examination.

_Kathy G_
Applicant's Signature

Witnessed by: _Woerner_

Copy of waiver served on N-400 applicant: _KG_

**EXHIBIT
3**
tabbies
p.3

**SUSAN A. DAVIS**
53RD DISTRICT, CALIFORNIA

WASHINGTON OFFICE
1224 LONGWORTH HOUSE OFFICE BUILDING
WASHINGTON, DC 20515
(202) 225-2040

DISTRICT OFFICE:
4305 UNIVERSITY AVENUE, SUITE 515
SAN DIEGO, CA 92105
(619) 280-5353

# Congress of the United States
## House of Representatives
### Washington, DC 20515–0553

COMMITTEES:
**ARMED SERVICES**
SUBCOMMITTEES:
MILITARY PERSONNEL
MILITARY READINESS

**EDUCATION AND THE WORKFORCE**
SUBCOMMITTEES:
EDUCATION REFORM
21ST CENTURY COMPETITIVENESS

September 12, 2006

Ms. Katy P. Guerrero
5974 Rancho Mission Road, Unit 255
San Diego, California 92108

Dear Ms. Guerrero:

I am writing regarding your request for assistance with your immigration case. My staff made a formal agency inquiry on your case and received information that your case is currently pending a security clearance.

As you may know, since the events of 9/11, the United States government has implemented stricter and more thorough processes for immigration petitions. The result of which is, in many cases, significantly increased delays.

There are various government agencies that can be involved in a security clearance check. They include United States Citizenship and Immigration Services (CIS), the Federal Bureau of Investigation (FBI), and Immigration and Customs Enforcement (ICE). When a case is pending a security clearance, the only information that is made available to my office by these agencies is whether it is pending. The agencies cannot disclose any more information than that.

I understand the immense hardship this situation may be placing on you and your family, and I understand how frustrating it can be not having more specific information. Because this problem of increased delays is widespread and affects so many, the only real solution may be to address it at a larger policy level. My staff and I are currently exploring ways that may be done.

In the meantime, I regret that I am unable to obtain more specific information for you about your case. As I indicated above, my staff inquired about the status of your case and was told that it is currently pending a security clearance. You will be notified directly by CIS when a determination is made. Because we are unable to obtain any further information at this time, we are going to close your case with our office.

If you have any questions or feel that we can be of further assistance to you, please call Ricardo Flores of my office at (619) 280-5353.

Sincerely,

SUSAN A. DAVIS
Member of Congress

**EXHIBIT**

**4**

tabbies

p.4

## RE: Case # A 076-451-411 (citizenship)one more thing

From: **Holly Hough** (Holly.Hough@mail.house.gov)
Sent: Thu 6/28/07 9:30 AM
To: kathya guerrero (soykathya@hotmail.com)

Katy,

I think that it is always a good idea to have some expert guidance. There are some nev the USCIS no longer will request an expedite on the FBI name check due to a mandem regulations (within the last months) have changed that. Keep me posted.

**Holly Hough**
**Congressional Staff Aide**
**Congressman Duncan Hunter**
**619-448-5201, fax 619-449-2251**

**From:** kathya guerrero [mailto:soykathya@hotmail.com]
**Sent:** Thursday, June 28, 2007 9:24 AM
**To:** Holly Hough
**Subject:** RE: Case # A 076-451-411 (citizenship)one more thing

Holly one more thing

Exh. 4
p. 5

Law Offices of

## Jan Joseph Bejar
A Professional Law Corporation

2727 Camino del Rio South, Suite 110
San Diego, California 92108
Tel: (619) 291-1112 • Fax: (619) 291-1102
e-mail: jbejar@immigrationlawclinic.com
www.immigrationlawclinic.com

Jan Joseph Bejar, Esq.*
Nicole A. Leon, Esq.
Susan P. Worm, Esq.*
Nanya Thompson, Esq.
Ivy Leyva, Paralegal

*Certified Specialist - Immigration and Nationality Law
 The State Bar of California Board of Legal Specialization
*Admitted to practice with the California and Illinois State Bar

<u>Via Certified Mail</u>

November 16, 2007

Paul Pierre, District Director
U.S. Citizenship & Immigration Services
880 Front Street, Rm. 1234
San Diego, CA 92101

RE:    **Withdrawal of INA § 336 Waiver**
        **Katy GUERRERO, A76 451 411**

Dear Mr. Pierre:

Ms. Guerrero attended her naturalization interview on June 6, 2005. At the interview, which Ms. Guerrero attended pro se, she signed a waiver of her right to enforce USCIS' statutory requirement to determine her application within 120 days of her examination. Ms. Guerrero satisfied the requirements for naturalization at the time of her interview more than two years ago on June 6, 2005, but, to date, her application remains pending, presumably due to her FBI name check.

Effective immediately, Ms. Guerrero withdraws her waiver of the right to enforce USCIS' statutory obligation to determine her application for naturalization within 120 days. Ms. Guerrero's written notice of her withdrawal of the waiver is enclosed. Ms. Guerrero expects to receive a determination on her application for naturalization within 120 days. If she does not receive a determination in 120 days, then Ms. Guerrero will apply to the federal district court under INA § 336(b) for a determination.

Finally, please note that Ms. Guerrero's correct address is as follows: 7506 Parkway Dr, #204, La Mesa, CA 91942.

We greatly appreciate your attention to this matter.

Sincerely yours,

Susan P. Worm, Esq.
For: JAN JOSEPH BEJAR,
A Professional Law Corporation

EXHIBIT

5

P6

U.S. Department of Justice
Immigration and Naturalization Service

**Notice of Entry of Appearance
as Attorney or Representative**

Appearances - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. Availability of Records - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| In re: N400 | Date: 11/16/2007 |
|---|---|
| | File No. A 76 451 411 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

| Name: Katy P. GUERRERO-Diaz | ☐ Petitioner  ☐ Beneficiary | ☑ Applicant |
|---|---|---|

Address: (Apt. No.)    (Number & Street)    (City)    (State)    (Zip Code)
7506 Parkway Dr. # 204    La Mesa    CA    91942

| Name: | ☐ Petitioner  ☐ Beneficiary | ☐ Applicant |
|---|---|---|

Address: (Apt. No.)    (Number & Street)    (City)    (State)    (Zip Code)

*Check Applicable Item(s) below:*

☑ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia
California / Illinois _____ Supreme Courts _____ and am not under a court or administrative agency
_____ Name of Court _____
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with _____
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. *(If you check this item, also check item 1 or 2 whichever is appropriate.)*

☐ 4. Others (Explain Fully.)

| SIGNATURE  _(signature)_ | COMPLETE ADDRESS Law Offices of Jan Joseph Bejar, APLC 2727 Camino del Rio South, Suite 110 San Diego CA 92108 |
|---|---|
| NAME (Type or Print) Susan P. Worm, Esq. | TELEPHONE NUMBER 619-291-1112 |

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*
Law Offices of Jan Joseph Bejar
_____ (Name of Attorney or Representative) _____

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*
N-400 and all immigration matters

| Name of Person Consenting Katy GUERRERO | Signature of Person Consenting  _(signature)_ | Date 11/16/07 |
|---|---|---|

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such records is contained in 8CFR 103.10 and 103.20 Et.SEQ.

Form G-28 (09/26/00)Y

Exh.5
p.7

November 16, 2007

Paul Pierre, District Director
U.S. Citizenship & Immigration Services
880 Front Street, Rm. 1234
San Diego, CA 92101

      Re:    Withdrawal of my waiver
              A 76 451 411

Dear Director Pierre:

My name is Katy Guerrero.  On June 6, 2005, I signed a waiver of the United States Citizenship and Immigration Service's requirement to make a decision on my Form N-400, Application for Naturalization within 120 days.

I now withdraw this waiver.  Please adjudicate my application within 120 days, or I will enforce this requirement in federal court.  Thank you for your attention to this matter and for the adjudication of my application.

Sincerely,

Katy Guerrero

Exh. 5
p. 8



Home    Contact Us    Site Map    FAQ

Search

Advanced Search



Services & Benefits    Immigration Forms    Laws & Regulations    About USCIS    Education & Resource    Press Room

[ Print This Page ]    [ Back ]

# U.S. Citizenship and Immigration Services
## San Diego CA Processing Dates
## Posted April 15, 2008

The processing times shown below are a tool for our customers to gauge our current processing times. When applications and petitions are completed within our target timeframes, that goal will be shown in the data display.

The processing times shown below are for applications that have just been completed. If you have just filed your application, these timeframes may not reflect how long your application will take to be completed. We encourage you to check this page periodically before inquiring about your case. The processing times are updated monthly.

USCIS has received a significant increase in the number of applications filed. In July and August, nearly 2.5 million applications and petitions of all types were received. This compares to 1.2 million applications and petitions received in the same time period last year. This fiscal year, we received 1.4 million applications for naturalization; nearly double the volume we received the year before. The agency is working to improve processes and focus increased resources, including hiring approximately 1,500 new employees, to address this workload.

As a result, average processing times for certain application types may be longer. In particular, naturalization applications filed after June 1, 2007 may take approximately 13-15 months to process.

We offer a variety of services after you file.  For example, for most kinds of cases you can check the status of your case online.

For more information about when and how to contact us, whether your case is outside our processing time or if there are other issues, please see our customer guide –

Case Services - How do I... know what kind of services are available to me after I file my application or petition?

District Office Processing Dates for **San Diego CA** Posted April 15, 2008

| Form | Form Name | Processing Timeframe: |
|------|-----------|----------------------|
| I-131 | Application for Travel Documents | December 11, 2007 |
| I-485 | Application to Register Permanent Residence or Adjust Status | August 07, 2007 |
| I-600 | Petition to Classify Orphan as an Immediate Relative | December 24, 2007 |
| I-600A | Application for Advance Processing of Orphan Petition | December 24, 2007 |
| I-765 | Application for Employment Authorization | January 29, 2008 |
| N-400 | Application for Naturalization | July 04, 2007 |
| N-600 | Application for Certification of Citizenship | Septem |

**EXHIBIT**

6

8-9



Citizenship and Immigration Services Ombudsman

# Annual Report 2007

**Submitted to:**

**United States Senate**
**Committee on the Judiciary**

**United States House of Representatives**
**Committee on the Judiciary**

**June 11, 2007**


Homeland
Security


EXHIBIT
7

were approved. This process would ensure that USCIS does not accept more applications than the number of visas available.

Another issue with priority dates and workloads is connected to the new fee rule. The Ombudsman anticipates that when the new fee rule goes into effect in July, delays in adjudication will significantly impact the agency if it does not track visa information, including visa classifications, priority dates, and country of chargeability. Without tallying cases receipted by visa category, USCIS inevitably will accept ineligible applications and more applications than it can process in the given timeframe. The agency will not collect fees for interim benefits issued for new green card applicants, as the new fee rule requires only one payment for both. In addition, there may be large numbers of retrogressed cases and, eventually, multiple issuances of interim benefits.

As described in the Ombudsman's 2006 Annual Report (at pp. 13-16), the Ombudsman continues to be concerned about USCIS' data integrity and failure to meet its obligation to maintain an accurate count of pending employment- and family-based preference applications. Although the focus is on employment-based visa applications, similar concerns exist for family-based preference cases. The continued collaboration of these agencies supports the Ombudsman's vision of cooperation to provide benefits in a timely and efficient manner.

### F.    Name Checks and Other Security Checks

FBI name checks, one of several security screening tools used by USCIS, continue to significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives. FBI name checks may be the single biggest obstacle to the timely and efficient delivery of immigration benefits. The problem of long-pending FBI name check cases <u>worsened</u> during the reporting period.

### 1.    Background

As of May 2007, USCIS reported a staggering 329,160 FBI name check cases pending, with approximately 64 percent (211,341) of those cases pending more than 90 days and approximately 32 percent (106,738) pending more than one year.[40] While the percentages of long-pending cases compared to last year are similar, the absolute numbers have increased. There are now 93,358 more cases pending the name check than last year. Perhaps most disturbing, there are 31,144 FBI name check cases pending more than 33 months as compared to 21,570 last year – over a 44 percent increase in the number of cases pending more than 33 months.[41]

---

[40] *See* USCIS FBI Pending Name Check Aging Report (May 4, 2007). It is important to note that USCIS does not include within its backlog cases pending due to FBI name checks. There are 155,592 FBI name check cases pending more than six months that otherwise may be part of USCIS' backlog. *See* section III.B for a discussion of USCIS backlogs.

[41] *See id.*

Exh. 7
p. 11

**Figure 10:  Pending FBI Name Checks**

| Age of Pending Response | Total Count (May 4, 2007) | Total Count (May 17, 2006) |
|---|---|---|
| < 3 months | 117,819 | 82,636 |
| 3 - 6 months | 55,749 | 33,450 |
| 6 - 9 months | 28,029 | 20,047 |
| 9 - 12 months | 20,825 | 16,845 |
| 12 - 15 months | 14,133 | 15,064 |
| 15 - 18 months | 13,931 | 10,636 |
| 18 - 21 months | 11,035 | 8,144 |
| 21 - 24 months | 12,398 | 8,325 |
| 24 - 27 months | 11,765 | 9,754 |
| 27 - 30 months | 6,600 | 4,435 |
| 30 - 33 months | 5,732 | 4,896 |
| > 33 months | 31,144 | 21,570 |
| **Total Pending** | **329,160** | **235,802** |

During the reporting period, processing delays due to FBI name checks were an issue in approximately 25 percent of all written case problems received by the Ombudsman.  Resolving the FBI name check issue is included in the Ombudsman's top five priorities posted on the office website.[42]  Unlike FBI name checks, other types of background and security checks – *e.g.*, fingerprint checks, the Interagency Border Inspection Systems name checks (IBIS), and the Automated Biometric Identification System (IDENT) checks – return results within a few days, if not a few minutes.  These law enforcement and watch list checks do not significantly prolong USCIS processing times or contribute to the USCIS backlog.

As described in the Ombudsman's 2006 Annual Report (at p. 24), the FBI provides information to USCIS regarding anyone who is the principal subject of an investigation or is a person referenced in a file.  USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits.  The FBI provides the name check results at USCIS' request.  Name checks are not conducted by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI.  Instead, the name checks are a fee-for-service that the FBI provides to USCIS and according to USCIS-defined standards.

Once USCIS forwards records to the FBI for name checks, the process and the turnaround time for the checks are outside of USCIS' control.  Completion of the name check process may take considerable time because manual reviews of FBI files are sometimes required.  This review may include FBI reporting on fragments of names of people who are not necessarily central or directly related to an investigation or law enforcement matter.  In discussions with the

---

[42] *See* section VI.F.

Exh. 7
p. 12

Ombudsman, the FBI has stated that it lacks the resources to perform the function in a timely manner.

## 2.    Impact of Long-Pending FBI Name Checks on USCIS Customers

The delay caused by the FBI name check has substantial consequences to applicants and their families, as well as to our country and the economy.  Examples of how legitimate applicants suffer include:

- Loss of employment and employment opportunities where the position requires green card status or U.S. citizenship;

- Possible termination of employment due to the inability to comply with required Form I-9 employment verification procedures where USCIS delays interim EAD issuance;

- Difficulties obtaining drivers' licenses;

- Inability to qualify for certain federal grants and funds;

- Limitations on the ability to purchase property;

- Difficulties obtaining credit and student loans; and

- Disqualification from in-state tuition.

---

*CASE PROBLEM*

   *The applicant's green card application has been pending since early 2005 due to the FBI name check.  The applicant is a valued researcher at a U.S. pharmaceutical company.* ▓▓

---

*CASE PROBLEM*

   *The applicant's green card application has been pending with USCIS for approximately four years due to the FBI name check.  The applicant is a researcher at a U.S. university and, because of the adjudication delay, the university and the individual have been disadvantaged in seeking grant proposals and funding.  Specifically, the individual reports that he is currently working on federal research projects.  The applicant's inability to advance critical work for the project is a serious impediment to the university, its competitiveness, and the applicant's professional advancement.* ▓▓

---

Exh. 7
p. 13

> **CASE PROBLEM**
>
> *In fall 2003, an applicant filed a green card application, which remained pending due to FBI name checks until spring 2007. During the course of the adjudication, the applicant was fingerprinted and applied for interim benefits several times. Although the applicant applied for most of the interim benefits in a timely manner, the filing of the last EAD was not timely, and the applicant had to end his employment. In correspondence to the Ombudsman in the winter of 2007, the applicant related that he is a cancer patient who no longer has income necessary to pay for treatments.*

In February 2007, USCIS made public the criteria for expedited treatment of FBI name checks. While this change should help with specific cases, the *status quo* for FBI name check completion is unacceptable from the standpoint of national security and immigration benefits processing.

### 3.    Value of the FBI Name Checks

The challenge for USCIS (and perhaps the challenge for DHS and the entire federal government) is to evaluate the value of maintaining the current FBI name check process relative to considerations of threat, vulnerability, and consequence. The Ombudsman agrees with the assessment of many case workers and supervisors at USCIS field offices and service centers that the FBI name check process has limited value to public safety or national security, especially because in almost every case the applicant is in the United States during the name check process, living or working without restriction.

The Ombudsman recommended in the 2006 Annual Report (at p. 25) that the FBI name check process be re-examined. Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.

In its 2006 Annual Report Response (at p. 10), USCIS stated:

> Although these security checks may require a more lengthy processing time, USCIS believes that performing them is essential to identifying national security and public safety concerns that would not have been uncovered by other means . . . in, a few cases, the information obtained from the FBI through this process has reflected very significant issues and risks. FBI name checks disclose information to USCIS that is otherwise not available. Information contained in 39 [percent] of the FBI positive responses (letterhead memoranda) received in FY 06 was not contained in IBIS/TECS, USCIS' primary background check tool. . .. [A]lthough a heavy price is paid in inquiries, mandamus actions, and other forms of litigation, USCIS is committed to effective

Exh. 7
p. 14

background checks, and thus is committed to the FBI name check. In fact, under the new fee rule currently under review, USCIS proposes to dedicate more funds to the FBI name check process as the FBI has indicated the fees they charge for these checks will increase and additional staff will be added to the process. This should help to speed up the name check process and reduce the backlog significantly.

Use of the 39 percent positive response rate as referenced by USCIS to justify continuing this program may exaggerate the value of the FBI name check. It is unclear how many of the FBI name check "responses" also were revealed by one or more of the other security checks conducted for the applications. To date, the Ombudsman has been unable to ascertain from USCIS the total number of actual problem cases that the agency discovered exclusively as a result of the FBI name check. The Ombudsman understands that most, if not all, of the problem cases which would result in an eventual denial of benefits also can be revealed by the other more efficient, automated criminal and security checks that USCIS initiates.

> *COMMENTS FROM OMBUDSMAN'S TELECONFERENCE*
>
> *One caller mentioned that USCIS does not schedule applicants for interviews because security clearances are not yet completed. He suggested that USCIS needs to look at the cost-benefit of doing these clearances. The caller stated he is in the military and has a top secret clearance.* ▓▓
>
> *Another caller suggested that information could be sent every "X" number of months to the applicant or attorney that the application still is held up for pending name checks, which would avert the many update requests.* ▓▓

### 4.     Possible Solutions to the FBI Name Check Delays

During this and previous reporting periods, the Ombudsman had numerous meetings with USCIS leadership on FBI name checks and discussed a number of solutions to the name check logjam.

### a.     Pre-Application Security Checks

A possible solution to the name check problem is pre-application security checks. USCIS has not chosen to implement such a process, which would dramatically impact the agency's revenue stream for a short period of time. Simultaneously, USCIS is failing to make basic changes to its processing methodology to reduce fraud and ineligible applicants. Instead, USCIS continues to substantially fund a process with questionable value. USCIS maintains that the name check process is of value, but it remains unclear whether the process has added any additional value over the security processes already in place.

Exh. 7
p. 15

*Citizenship and Immigration Services Ombudsman* **Annual Report to Congress June 2007**

**Figure 11: Ombudsman's Suggested Pre-Application Security Check Process**



1. May be performed in the United States or abroad.
2. Can include individuals applying for nonimmigrant visas or changes of status, individuals applying for immigrant status (adjustment or consular process), refugees, and naturalization applicants.
3. DHS/USCIS will collect and share data through an integrated case (person-based) management system. A component of this system will be an immigration case management system.

Exh. 7
p. 16

Figure 11 outlines the security screening steps to clear an applicant prior to interview, where necessary, and for adjudication of the immigration benefits application. The applicant/petitioner would register intent and pay a fee to cover the costs of the process. Pre-application is more than a pre-screening that determines *prima facie* eligibility. It moves the case to an adjudicating officer who reviews the file and interviews the applicant, if necessary. Since all fingerprints, biometrics, security clearances, necessary documents, medical evaluation, financial support, and visa availability are cleared, the applicant can be processed to conclusion immediately after interview. A Clearance Report is documentary proof that the applicant successfully completed the pre-application process. This process would place biometrics capture and security screening in the hands of appropriate law enforcement/contract employees, trained in the pre-screening process, and the determination of eligibility for benefits in the hands of USCIS officers trained in immigration law.

The agency also should review the DHS resources available to assist in exploring options to solve the backlogged FBI name check process. A number of DHS law enforcement entities perform security checks similar to those performed by USCIS.

### b. USCIS Background Check Service IT System for Tracking FBI Name Check Cases

USCIS' 2006 Annual Report Response (at p. 10) indicates that the agency's planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, was to be implemented in late April with deployment beginning in May 2007. As of this writing, the BCS is not yet deployed. Currently, USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases. In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated. Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case. Those other checks then need to be reinitiated, adding financial and time costs for applicants and USCIS. The Ombudsman fully supports the expeditious rollout of the BCS system.

### c. A Risk-Based Approach to FBI Name Checks

Name checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military. Many individuals subject to lengthy name checks are either already green card holders or have been issued Employment Authorization Documents (EADs). These documents allow them to receive Social Security cards and state drivers' licenses. Most green card applicants are also eligible to receive advance parole enabling them to travel outside the United States and return as long as their cases are pending, which can be for many years under the current process.

Exh. 7
p. 17

> **CASE PROBLEM**
>
> In early 2006, the applicant applied for naturalization. USCIS informed the applicant that the application is pending due to the FBI name check. The applicant currently is a contract employee for a federal agency and was security screened prior to beginning that employment.

> **CASE PROBLEM**
>
> The applicant's green card application was filed in early 2004. The application remains pending due to the FBI name check. The applicant previously served as a security officer at a U.S. embassy and was subject to rigorous security screening for the position.

In November 2006, Secretary Chertoff discussed a risk-based approach to homeland security threats, vulnerabilities, and consequences:

> [T]he core principle that animates what we do at DHS . . . is risk management. It is a recognition of the fact that management of risk is not elimination of risk. There is no elimination of risk in life, and anybody who promises every single person protection against every threat at every moment in every place in the country is making a false promise . . .. What we do have to do is identify and prioritize risks -- understanding the threat, the vulnerability and the consequence. And then we have to apply our resources in a cost-effective manner, using discipline and common sense in order to minimize the risk without imposing undue cost on our communities and our families.[43]

Despite Secretary Chertoff's continuing emphasis on risk management, USCIS performs FBI name checks without the benefit of risk management modeling. In recent visits to USCIS field offices, a number of leaders have questioned the usefulness of the FBI name checks citing some of the same concerns discussed here. The process is not working and consideration should be given to re-engineering it to include a risk-based approach to immigration screening and national security. The U.S. Government Accountability Office recently noted in a report that "[w]hile the Secretary of DHS has expressed a commitment to risk management, DHS has not

---

[43] DHS Secretary Michael Chertoff, Prepared Remarks at the 2006 Grants & Training National Conference, Washington, D.C. (Nov. 28, 2006); http://www.dhs.gov/xnews/speeches/sp_1164738645429.shtm (last visited June 3, 2007).

Exh. 7
p. 18

performed comprehensive risk assessments in . . . immigration and customs systems to guide resource allocation decisions."[44]

Every effort should be undertaken to identify and remove persons who pose threats to the United States, which would include rescinding immigration benefits after USCIS has granted them. It would be irresponsible for law enforcement entities to stop their investigation of a potential crime merely because the person who is the subject of their investigation has obtained a green card or U.S. citizenship. Similarly, it would be illogical to think that delaying issuance of a green card or U.S. citizenship will prevent a criminal from committing a crime. Considering the protection the FBI name check provides, the cost of government resources used, and mental and actual hardships to applicants and their families, USCIS should reassess the continuation of its policy to require FBI name checks in their current form.

---

*RECOMMENDATION AR 2007 -- 06*

*In addition to the Ombudsman's recommendation in the 2006 Annual Report, AR 2006 –04, the Ombudsman recommends that USCIS: (1) evaluate the value of the name check in its current format and establish a risk-based approach to screening for national security concerns; (2) work with the FBI to provide the necessary resources to perform name checks in a timely manner; and (3) provide greater transparency to customers by publishing monthly the number of long-pending FBI name check cases.*

---

## G.    Interim Benefits

The Ombudsman strongly supports efforts by USCIS to eliminate the need for interim benefits in favor of timely, efficient, and secure adjudication of the ultimate immigration benefit.

### 1.    Background

Generally, USCIS issues interim benefits – EADs and advance parole documents (international travel documents) – to individuals who have green card applications pending with the agency for over 90 days.[45] The Ombudsman is encouraged by constructive dialogue with USCIS during the reporting period that addresses funding and security issues related to the processing of interim benefits.

On May 30, 2007, USCIS established new filing fees for immigration benefits.[46] Under the new fee schedule, USCIS will charge a single fee for green card applications to include recovery of the processing costs for interim benefits. The Ombudsman supports this approach to

---

[44] U.S. Government Accountability Office Report "Homeland Security: Management and Programmatic Challenges Facing the Department of Homeland Security," GAO-07-398T at 2 (Feb. 2007); http://www.gao.gov/new.items/d07398t.pdf (last visited June 6, 2007).

[45] *See* 8 C.F.R. § 274a.13(d).

[46] *See* "Adjustment of the Immigration and Naturalization Benefit Application and Petition Fee Schedule," 72 Fed. Reg. 29,851 (May 30, 2007); *see also* section III.H.1.

Exh. 7
p. 19

UNITED STATES
DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

# 150105      - MB

April 23. 2008
08:52:09

Civ Fil Non-Pris
USAO #.: 08CV0733
Judge..: BARRY T MOSKOWITZ
Amount.:                      $350.00 OC
Check#.: 519916630

Total-> $350.00

FROM: KATY P GUERRERO VS MICHAEL
CHERTOFF, ET AL.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

FILED

| I. (a) PLAINTIFFS | DEFENDANTS Michael Chertoff, Secretary; |
|---|---|
| Katy P. GUERRERO | Jonathan Scharfen, Acting Director; Paul Pierre, District Director; Michael B. Mukasey, Attorney General; Robert S. Mueller, III; FBI Director. |

08 APR 23 AM 8:53

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

**(b)** County of Residence of First Listed Plaintiff   San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number) 619-291-1112
Jan Joseph Bejar, Esq.; Law Offices of Jan Joseph Bejar, APLC; 2727 Camino del Rio South #110

Attorneys (If Known)
United States Attorney's Office
San Diego, CA 92108

'08 CV 0733 BTM NLS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | **PERSONAL INJURY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 362 Personal Injury - Med. Malpractice | | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 891 Agricultural Acts |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | **PRISONER PETITIONS** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** | **IMMIGRATION** | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | ☐ 462 Naturalization Application | |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | ☐ 463 Habeas Corpus - Alien Detainee | |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
8 USCA s. 1447(b); 5 USCA s. 702; 28 USCA s. 1361

Brief description of cause:
Review of long-delayed application for naturalization

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE N/A

DOCKET NUMBER n/a

DATE
04/22/2008

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # 150105   AMOUNT 350.00   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

04/23/2008